## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEREMY DYER, STEVEN WETZEL, and JAMES JU, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKOGEN'S FOODLINER, INC., d/b/a FESTIVAL FOODS,<br><br>Defendant. | )<br>)<br>)<br>) **COLLECTIVE AND**<br>) **CLASS ACTION COMPLAINT**<br>)<br>) **Jury Trial Demanded**<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>) |

## INTRODUCTION

Plaintiffs Jeremy Dyer, Steven Wetzel, and James Ju ("Plaintiffs"), individually and on behalf of all others similarly situated, through counsel, file this Collective and Class Action Complaint (the "Complaint") against Defendant Skogen's Foodliner, Inc. d/b/a Festival Foods (or such other entit(ies) that own and operate Festival Foods grocery stores in Wisconsin) ("Festival Foods" or "Defendant"), seeking all available relief under (1) the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et. seq*., as a collective action under § 216(b), and (2) Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 272.001 et seq., and Wis. Admin. Code § DWD 274.01 et seq. ("WWPCL"), as a class action under Fed. R. Civ. P. 23. The following allegations are based on Plaintiffs' respective personal knowledge and belief and upon information made known to respective Plaintiffs.

## NATURE OF THE ACTION

1.    This action seeks to recover unpaid overtime compensation under the FLSA for Plaintiffs, and other current and former employees working in store level salary-paid grocery

department manager-titled or supervisor-titled positions (Bakery, Center Store 3ʳᵈ Shift, Deli, Food Court, Fresh Cut, Frozen/Dairy, HBC-GM, Kitchen, Grocery, Guest Services, Meat, Natural Foods, Produce, Wine & Spirits, etc. - but specifically excluding the "HR Manager"-titled or "HR Generalist"-titled positions) in Wisconsin below the in-store hierarchical level of Store Director, and also including any additional period of salary-paid work in a management training position for such DM positions (including but not limited to any weeks worked in salary-paid LEAD (Leadership Exploration and Development) or GOLD (Grocery Operations Leadership Development) training programs for DM positions), who worked more than 40 hours in any given workweek, for which they were classified and paid by Defendant as exempt from all state and federal overtime pay laws, from three years before the date this Complaint was filed until entry of judgment in this matter (the "Relevant Period") (collectively "DMs"), and who elect to opt into this action pursuant to the FLSA (the "Collective.")

2.      This action also seeks to recover unpaid overtime compensation under the WWPCL, for Plaintiffs and other DMs who worked more than 40 hours in any given work week at a Festival Foods location in Wisconsin for which they were classified and paid by Defendant as exempt from two years before the date this Complaint was filed until entry of judgment in this matter (the "Class Relevant Period"), pursuant to Fed. R. Civ. P. 23 (the "Wisconsin Class").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

4.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, Defendant maintains its

principal office and corporate headquarters in this District, and Plaintiff Dyer worked for

Defendant in this District during the Relevant Periods.[1]

5.      Defendant regularly conducts business in this District.

6.      Defendant's annual report most recently filed with the Wisconsin governmental

agenc(ies) responsible for receiving and maintaining a corporation's required reporting of

corporate principal office addresses lists its principal office as "3800 EMERALD DR E,

ONALASKA, WI 54650-6760,"[2] located within this District.

7.      Defendant maintains its principal office, and corporate headquarters, at 3800

Emerald Dr E, Onalaska, WI 54650-6760, located within this District.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## THE PARTIES

9.      Plaintiffs are individuals residing in Wisconsin.

10.     Plaintiff Dyer was employed by and was permitted to work for Defendant as a

DM in the salaried, exempt-paid Deli Kitchen Manager (alternatively referenced as Kitchen

Manager or Assistant Deli Manager) position from approximately November, 2021 through

approximately May 31, 2023 at Defendant's store location in Madison, WI (Dane County).

11.     Plaintiff Wetzel was employed by and was permitted to work for Defendant as a

DM in the salaried, exempt-paid Meat Manager (alternatively referenced as Meat Department

Manager) position beginning with his salary-paid "GOLD TRAINEE – MEAT" position in

---

[1] Unless otherwise specified, "Relevant Periods" means both the Relevant Period and the Class Relevant Period as defined above.
[2] Defendant reports this location as its principal office address in, and the Court may take judicial notice of, Defendant's most recent (2024) annual report filing as displayed by the State of Wisconsin Department of Financial Institutions by corporate records search for Defendant's corporate name at https://apps.dfi.wi.gov/apps/corpsearch/search.aspx# (last visited by undersigned April 21, 2025).

August, 2021, through his completion of that training program followed by working in that salary-paid DM position (Meat Manager), at Defendant's store location at 27th & Lane in Milwaukee, WI through approximately November, 2024 when Defendant closed that store.

12.    Plaintiff Ju was employed by and was permitted to work for Defendant as a DM in the salaried, exempt-paid Bakery Manager position from approximately July, 2023 through approximately September or October, 2023, at Defendant's store location in Menasha, WI.

13.    Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and a copy of their consents are attached hereto.

14.    Defendant is a corporation organized and existing under the laws of Wisconsin, with its principal office located in Wisconsin.

15.    Defendant owns and operates more than 40 Festival Foods grocery stores, all of which are located within Wisconsin.

16.    At all times relevant herein, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and the WWPCL.

17.    At all times relevant herein, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18.    At all times relevant herein, Defendant is and was incorporated in, maintained its corporate headquarters in, and engaged in business in, the State of Wisconsin, such that the exercise of jurisdiction over Defendant is proper.

19.    At all times relevant herein, Defendant has been an enterprise engaged in commerce or the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that

have moved in or were produced for commerce by any person, 29 U.S.C. § 203(s)(1). Further, Defendant has had (and has) an annual gross volume of sales, made or done business in an amount of at least $500,000.

20.    At all times relevant herein, Plaintiffs and DMs were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

21.    Defendant issued paychecks to Plaintiffs and DMs during their DM employment.

22.    Defendant suffered, permitted or directed the work of Plaintiffs and DMs, and Defendant benefited from work performed by Plaintiffs and DMs.

23.    Pursuant to Defendant's policy, pattern, and practice, Defendant did not pay Plaintiffs and other DMs overtime wages for hours they worked for Defendant's benefit in excess of 40 hours in a workweek within the Relevant Periods.

## FACTUAL ALLEGATIONS

24.    Defendant employed Plaintiffs and the putative Collective and Wisconsin Class members as DMs.

25.    Defendant maintains control, oversight, and discretion over the operation of its retail grocery stores, including its employment practices with respect to Plaintiffs and the putative Collective and Wisconsin Class.

26.    Plaintiffs and the putative Collective and Wisconsin Class performed work as DMs that was integrated into the normal course of Defendant's business.

27.    Consistent with Defendant's policy, pattern and/or practice, Plaintiffs and the putative Collective and Wisconsin Class worked in excess of 40 hours per workweek as DMs on one or more occasions within the Relevant Periods.

5

28.     Consistent with Defendant's policy, pattern and/or practice, when Plaintiffs and the putative Collective and Wisconsin Class worked in excess of 40 hours per workweek as DMs, Defendant did not pay overtime premium wages for those hours over 40 within the Relevant Periods

29.     During his time as a DM, Plaintiff Dyer routinely worked more than 40 hours a week; indeed, Plaintiff estimates that he worked an average of more than 45 hours in a workweek as a DM, even exceeding 50 hours in some workweeks as a DM during the Relevant Periods.

30.     During his time as a DM, Plaintiff Ju routinely worked more than 40 hours a week; indeed, Plaintiff estimates that he worked an average of more than 47 hours in a workweek as a DM, even exceeding 60 hours in some workweeks as a DM during the Relevant Periods.

31.     During their time worked as DMs, Plaintiffs were not paid any overtime premium wages for the hours Plaintiffs worked in excess of 40 in a workweek during the Relevant Periods.

32.     Defendant, by and through its agents and managerial employees, assigned all of the work performed by Plaintiffs and the putative Collective and Wisconsin Class members, and is aware of all the work that they have performed.

33.     During the Relevant Periods, the work primarily performed by Plaintiffs and the putative Collective and Wisconsin Class members required no capital investment.

34.     During the Relevant Periods, the work performed by Plaintiffs and the putative Collective and Wisconsin Class members for the majority of their workweek hours required

work in their respective department's service area (not accessible by customers) or front (customer accessible, a/k/a "floor") areas, not in an office.

35.     During the Relevant Periods, at any given time Defendant maintained and utilized only one job description and/or job posting for each DM position, regardless of location, which differed in content for the specific position only by the job location identified ("job posting").

36.     Throughout the Relevant Periods, or pleading in the alternative, on one or more occasions within the Relevant Periods, the job postings for the DM positions included the statement "The physical demands and work environment described below are representative of those that must be met by an associate to successfully perform the essential functions of this job," followed by information describing the physical demands and work environment.

37.     Throughout the Relevant Periods, or pleading in the alternative, on one or more occasions within the Relevant Periods, Defendant's job posting utilized for the DM positions separately identified below contained the information quoted below for that DM position:

      a.     <u>Salary-paid Bakery Manager (however titled by Defendant, including "Bakery Department Manager")</u>: "FLSA Status: Salary"; "The Bakery Department Manager is a full-time salaried position. The work schedule will include mornings, afternoons, evenings, weekends, and holidays."; "Guest Services: Provide outstanding service to our guests, assist with their needs, and handle special requests."; "Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences[.] Support the Team: Other duties as assigned."; "Customer Focus: Ability to deal tactfully and effectively with guests…"; "The associate must possess the ability to stand in place for long periods of time; walk in the store; bend, stoop and kneel

regularly (50% of time). Requires fine finger and broad manual dexterity, and eye-hand-foot coordination in order to operate equipment. This position requires the associate to have the ability to have full range of upper body motion in order to occasionally lift stock. Requires the ability to perform repetitive tasks for prolonged periods of time. Must possess functional sensory abilities in order to visually monitor the store, create attractive displays, and to operate equipment. The position requires the associate to lift up to 60 pounds on an occasional basis (20% of time). Proper training and knowledge of power equipment which may include slicer, mixer, oven, knives and cutters, pallet or power jack, WAV, compactor, baler, and/or other baking equipment. Working conditions consist of occasional exposure to extreme temperatures (20% of time)."

b. <u>Salary-paid Center Store 3rd Shift Supervisor (however titled by Defendant, including "Center Store Supervisor")</u>: "FLSA Status: Salary/ Exempt"; "The Center Store 3 Shift Supervisor is a full-time salaried position. The work schedule will primarily include night, evenings, weekends, and holidays."; "Assist with stock organization and unloading: Help lead team in unloading product deliveries from pallets and maintaining organized stock rooms across multiple departments. Offer Assistance: Assist guests with product inquiries and ensure a positive shopping experience. Cashier Trained: Ready to step in at the register, and/or support store closing procedures when needed."; "Operate Equipment: Safely utilize forklifts, pallet jacks, and other warehouse equipment (training provided). Guest assistance: Help guests locate items across departments, suggest products, and provide alternatives when necessary….Regular, timely attendance in

8

compliance with the work schedule, and adequate notice to find a replacement for occasional absences[.] Support the Team: Other duties as assigned"; "Thorough understanding of all safety requirements and company safety policies, including proper lifting techniques and box cutter safety. Ability to learn and safely use the following equipment: forklift, harness, power jack, walk behind lift, WAV, baler, compactor. Ability to learn and use various systems, including Point-Of-Sale register system."; "The associate must possess the ability to stand in place for long periods of time; walk in the store; bend, stoop and kneel regularly. Requires fine finger and broad manual dexterity, and eye-hand-foot coordination in order to operate equipment. The associate must have full range of upper body motion in order to lift stock. Requires the ability to perform repetitive tasks for prolonged periods of time. Must possess functional sensory abilities in order to visually monitor the store, create attractive displays, and to operate equipment. The position requires the associate to lift up to 50 pounds on an occasional basis."

c.   Salary-paid Deli Manager (however titled by Defendant, including "Deli Department Manager"): "FLSA Status: Salary"; "The Deli Department Manager is a full-time salaried position. The typical schedule includes weekends, weekdays, and holidays, with one night shift per week and one late night per month. Shift times are subject to change based on store needs."; "Do you thrive in a fast-paced environment where your leadership and food preparation skills can make a difference?"; "Stand in one place for a long period of time, bend, stoop, and kneel regularly[.] Full range of upper body motion[.] Lifting up to 50 pounds on a frequent basis [.] May be exposed to varying temperatures such as

refrigerators, freezers, kitchens and sales floor[;]" "Ability to apply safety training and operate equipment such as hand jacks, slicers, and fryers[;]" "The Deli Department Manager is a full-time salaried position. The typical schedule includes weekends, weekdays, and holidays, with one night shift per week and one late night per month. Shift times are subject to change based on store needs."

d. <u>Salary-paid Food Court Manager (however titled by Defendant)</u>: "FLSA Status: Salary"; position "is a full-time, salaried position. This position may work a variety of shifts including days, nights, weekends and holidays based on what the business dictates."); "timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences. Other duties as assigned[.]"; "Works with the Food Court Leads to ensure success for the entire food court operation[.] Ensures correct signage is represented throughout the food court[.] "Provides excellent guest services…Assists all food court associates with daily responsibilities while leading by example"; "Ability to deal tactfully and effectively with guests…"; "Contributes to overall cleanliness of the cafe by maintaining, organizing, and cleaning work areas, shelving, and sales floor as needed"; "Stand in place for a long period of time, bend, stoop, and kneel regularly[.] Full range of upper body motion[.] Lifting up to 50 pounds on a frequent basis[.] May be exposed to extreme temperatures[.]"; "Proper training and knowledge of the following equipment/procedures: Hand jack, slicers, baler, trash compactor, fryer, oven, grinders, and mixers."

e. <u>Salary-paid Frozen/Dairy Manager (however titled by Defendant, including "Frozen/Dairy Department Manager")</u>: "FLSA Status: Salary"; position "is a

salaried position. The work schedule will include mornings, afternoons, evenings, weekends, and holidays."; "Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences. Other duties as assigned[.]"; "Provides excellent services to all guests[.] Assists guests with finding items they are looking for[.] Takes orders and other special requests[.]"; "Contributes to overall cleanliness of the department by picking up, organizing, and cleaning work areas, shelving, and sales floor as needed"; "Standing for extended periods of time[.] Lifting up to 50 pounds on an occasional basis[.] Frequent exposure to extreme temperatures[.]"; "requires proper training and knowledge of the following equipment/procedures: hand jack, baler, forklift, pallet jack, trash compactor, proper lifting techniques, and proper scanning techniques."

f.  Salary-paid Grocery Manager (however titled by Defendant, including "Grocery Department Manager"): "FLSA Status: salary"; position "is a salaried position. The work schedule will include mornings, afternoons, evenings, weekends, and holidays."; "Assists all Grocery Department associates with daily responsibilities while leading by example."; "Contributes to overall cleanliness of the department by picking up, organizing, and cleaning work areas, shelving, and sales floor as needed"; "Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences. Other duties as assigned[.]"; "The associate must possess the ability to stand in place for long periods of time; walk in the store; bend, stoop and kneel regularly. Requires fine finger and broad manual dexterity, and eye-hand-foot coordination in order to

operate equipment. The associate must have full range of upper body motion in order to lift stock. Requires the ability to perform repetitive tasks for prolonged periods of time. Must possess functional sensory abilities in order to visually monitor the store, create attractive displays, and to operate equipment. The position requires the associate to lift up 50-60 pounds on an occasional basis.”; “requires proper training and knowledge of the following equipment/procedures: hand jack, baler, forklift , pallet jack, trash compactor, proper lifting techniques, and proper scanning techniques.”

g.  Salary-paid Guest Services Manager (however titled by Defendant, including "Guest Services Department Manager”): “FLSA Status: salary”; position “is a full time salaried position. The typical shift to be worked will include weekends, weekdays, and holidays (time of shift is subject to change based on needs of each store). The Guest Services Manager is also required to work one night a week, and one late night per month.”; “Assists all department associates with daily responsibilities while leading by example.”; “Provides excellent services to all guests[.] Assists guests with finding items they are looking for on service counter and sales floor[.] Takes orders and other special requests[.] Answers the telephone and assists guests using proper phone etiquette[.]” “Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences[.] Other duties as assigned[.]”; “Ability to deal tactfully and effectively with guests…”; “The employee must possess the ability to stand in place for long periods of time; walk in the store; bend, stoop and kneel regularly  Requires fine finger and broad manual dexterity, and eye-hand-foot

12

coordination in order to operate equipment[.] This position requires the employee have the ability to have full range of upper body motion in order to occasionally lift stock.  Requires the ability to perform repetitive tasks for prolonged periods of time[.] Working conditions consist primarily of a temperature-controlled environment. The ability to work outside checking store property, in walk-in coolers or freezers for short periods of time is necessary[.]"; "requires proper training and knowledge of the following equipment/procedures: proper lifting techniques, proper scanning technique, trash compactor[.]"

h.  <u>Salary-paid Meat Manager (however titled by Defendant, including "Meat Department Manager")</u>: "FLSA Status Salary"; "The Meat Department Manager is a full-time salaried position. The work schedule will include mornings, afternoons, evenings, weekends, and holidays."; "Fulfills special orders…Provides exceptional guest service and lives Boomerang Principal while leading by example. Assists guests with finding items they are looking for on service counter and sales floor…Assists all Meat department associates with daily responsibilities while leading by example…Contributes to overall cleanliness of the department by picking up, organizing, and cleaning work areas, shelving, and sales floor as needed…Other duties as assigned. Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences…Ability to deal tactfully and effectively with guests.."; "The employee must possess the ability to stand in place for a long period of time; walk the store; bend, stoop, and kneel regularly. Requires fine finger and broad manual dexterity, and eye-hand-foot coordination in order to operate equipment. This

position requires the employee have the ability to have full rand of upper body motion in order to occasionally lift stock. Requires the ability to perform repetitive tasks for prolonged periods of time. Must possess functional sensory abilities in order to visually monitor the store, create attractive displays, and to operate equipment. This position requires the employee to lift up to 80 pounds on an occasional basis. May be exposed to varying temperatures such as refrigerators, freezers, kitchens, and sales floor[;]" and "requires proper training and knowledge of the following equipment/procedures hand jack, baler, forklift, proper lifting techniques, proper scanning techniques, hand truck, trash compactor."

i.    Salary-paid Natural Foods Manager and/or HBC-GM Manager and/or GM HBC Manager (however titled by Defendant, including "Natural Foods Department Manager" or "HBC & Natural Department Manager"): "FLSA Status: Salary"; position "is a full time position. The work schedule will include mornings, afternoons, evenings, weekends, and holidays."; "includes…stocking (ad and every day in stock), facing and maintaining of inline aisles and secondary displays"; "execute superior customer service[…]Perform other duties as assigned"; "Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences"; "The associate must possess the ability to stand in place for long periods of time; walk in the store; bend, stoop and kneel regularly. Requires fine finger and broad manual dexterity, and eye-hand-foot coordination in order to operate equipment. This position requires the associate have the ability to have full range of upper body

motion in order to occasionally lift stock. Requires the ability to perform
repetitive tasks for prolonged periods of time. Must possess functional sensory
abilities in order to visually monitor the store, create attractive displays, and to
operate equipment. Working conditions consist primarily of a temperature-
controlled environment."; "Requires proper training and knowledge of the
following equipment/procedures: wave, hand jack, baler, forklift, cutter, lifting
techniques, scanning technique, hand truck, trash compactor."

j.   Salary-paid Produce Manager (however titled by Defendant, including "Produce
Department Manager"): "FLSA Status Salary"; position "is a salaried position.
The work schedule will include mornings, afternoons, evenings, weekends, and
holidays."; "Provides customer service to guests. Assists guests with finding items
they are looking for on sales floor[.] Takes orders and other special requests[.]
Answers the telephone and assists callers using proper phone etiquette…Assists
all department associates with daily responsibilities while leading by
example…Contributes to overall cleanliness of the department by picking up,
organizing, and cleaning work areas, shelving, and sales floor as needed…Other
duties as assigned. Regular, timely attendance in compliance with the work
schedule, and adequate notice to find a replacement for occasional
absences…Ability to deal tactfully and effectively with guests.."; "The employee
must possess the ability to stand in place for long periods of time; walk in the
store; bend, stoop and kneel regularly. Requires fine finger and broad manual
dexterity, and eye-hand-foot coordination in order to operate equipment. This
position requires the employee have the ability to have full range of upper body

15

motion in order to occasionally lift stock. Requires the ability to perform repetitive tasks for prolonged periods of time.  Must possess functional sensory abilities in order to visually monitor the store, create attractive displays, and to operate equipment.  The position requires the employee to lift up to 60 pounds on an occasional basis. Working conditions consist of occasional exposure to extreme temperatures"; and "requires proper training and knowledge of the following equipment/procedures hand jack, baler, forklift, cutter, proper lifting techniques, proper scanning technique, hand truck, trash compactor."

k.  <u>Salary-paid Wine and Spirits Manager (however titled by Defendant, including "Wine and Spirits Department Manager")</u>: "FLSA Status Salary"; position "is a full-time salaried position. The work schedule will include mornings, afternoons, evenings, weekends, and holidays."; "Provides customer service to guests. Assists guests with finding items they are looking for on sales floor[.] Takes orders and other special requests[.] Answers the telephone and assists callers using proper phone etiquette…Assists all department associates with daily responsibilities while leading by example…Contributes to overall cleanliness of the department by picking up, organizing, and cleaning work areas, shelving, and sales floor as needed…Other duties as assigned. Regular, timely attendance in compliance with the work schedule, and adequate notice to find a replacement for occasional absences…Ability to deal tactfully and effectively with customers."; "The employee must possess the ability to stand in place for long periods of time; walk in the store; bend, stoop and kneel regularly. Requires fine finger and broad manual dexterity, and eye-hand-foot coordination in order to operate equipment.

This position requires the employee have the ability to have full range of upper body motion in order to occasionally lift stock. Requires the ability to perform repetitive tasks for prolonged periods of time. Must possess functional sensory abilities in order to visually monitor the store, create attractive displays, and to operate equipment. The position requires the employee to lift up to 50 pounds on an occasional basis.Working conditions consist of occasional exposure to extreme temperatures."; and "requires proper training and knowledge of the following equipment/procedures hand jack, baler, forklift, proper lifting techniques, proper scanning technique, hand truck, trash compactor."

38. Throughout the Relevant Periods, or pleading in the alternative, on one or more occasions within the Relevant Periods, Defendant's job posting utilized for the DM positions not separately identified in the preceding paragraph contained information similar to the information quoted for the separately identified DM positions in the preceding paragraph.

39. Throughout the Relevant Periods, the work performed by Plaintiffs and the putative Collective and Wisconsin Class members for the majority of their workweek hours involved tasks requiring the "physical demands and work environment representative of those that must be met by an employee to successfully perform the essential functions of the job " as stated in Defendant's job postings for their respective positions during those Relevant Periods.

40. During the Relevant Periods, the work primarily performed by Plaintiffs and the putative Collective and Wisconsin Class members did not include managerial responsibilities or the exercise of meaningful independent judgment and discretion.

41. During the Relevant Periods, Plaintiffs and the putative Collective and Wisconsin Class members performed the same or similar primary job duties, including many or all of the

following examples: manual labor not in an office, waiting on and servicing customers, preparing orders, preparing and displaying grocery products and items for sale, unloading, stocking, maintaining and keeping replenished the product offerings, and cleaning.

42.    Throughout the Relevant Periods, the primary job duties of Plaintiffs and the putative Collective and Wisconsin Class members did not include: hiring, firing, disciplining, directing the work of other employees, or exercising meaningful independent judgment and discretion.

43.    Throughout the Relevant Periods, the primary job duties of Plaintiffs and the putative Collective and Wisconsin Class members did not materially differ from the duties of non-exempt hourly-paid employees, which included many duties that were manual and non-exempt in nature.

44.    Throughout the Relevant Periods, the performance of manual labor and non-exempt duties occupied the vast majority of Plaintiffs' and the putative Collective and Wisconsin Class members' working hours.

45.    Throughout the Relevant Periods, Plaintiffs and the putative Collective and Wisconsin Class members were not in sole charge of the store as DMs.

46.    Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant had one company-wide classification in place at any specific time during the Relevant Periods for each DM position; in other words, Defendant applied the same exemption classification to all individuals working in the specific DM position at the time regardless of store location.

47.    Defendant classified and paid the following DM positions as salaried but exempt from the overtime premium requirements of the FLSA and the WWPCL throughout the Relevant Periods:

a. Bakery Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Bakery department.

b. Center Store 3rd Shift Supervisor, however variously titled by Defendant to reference the salary-paid manager or supervisor position(s) for the store's Center Store Department 3rd Shift.

c. Deli Manager, and Deli Assistant Department Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Deli department.

d. Food Court Manager a/k/a Caribou Manager, however variously titled by Defendant to reference the salary-paid manager or supervisor position(s) for the store's Asian cuisine, sushi, pizza, popcorn, and/or Caribou kiosk areas.

e. Fresh Cut Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Fresh Cut (or "Fresh Cuts") department.

f. Frozen/Dairy Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Frozen/Dairy department.

g. HBC-GM Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's HBC and/or GM department(s).

h. Kitchen Manager, and Deli Kitchen Manager, however variously titled by Defendant to reference the salary-paid kitchen or deli kitchen manager position(s)

19

(other than Deli Manager and Deli Assistant Department Manager) within the Deli department.

  i. Grocery Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Grocery department.

  j. Guest Services Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Guest Services department.

  k. Meat Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Meat department.

  l. Natural Foods, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Natural Foods and/or Natural & Organics department.

  m. Produce Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Produce department.

  n. Wine and Spirits Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Wine and Spirits department

48. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant internally classified and paid all DMs as exempt from the overtime provisions of the FLSA and state law during the Relevant Periods.

49. Pleading in the alternative, for one or more workweeks within the Relevant Periods, pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant internally classified and paid the following DMs as exempt from the overtime provisions of the FLSA and state law:

a.  Bakery Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Bakery department.

b.  Center Store 3rd Shift Supervisor, however variously titled by Defendant to reference the salary-paid manager or supervisor position(s) for the store's Center Store Department 3rd Shift.

c.  Deli Manager, and Deli Assistant Department Manager, however variously titled by Defendant to reference the salary-paid manager positions for the store's Deli department.

d.  Food Court Manager a/k/a Caribou Manager, however variously titled by Defendant to reference the salary-paid manager or supervisor position(s) for the store's Asian cuisine, sushi, pizza, popcorn, and/or Caribou kiosk areas.

e.  Fresh Cut Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Fresh Cut (or "Fresh Cuts") department.

f.  Frozen/Dairy Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Frozen/Dairy department.

g.  HBC-GM Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's HBC and/or GM department.

h.  Kitchen Manager or Deli Kitchen Manager, however variously titled by Defendant to reference the salary-paid kitchen or deli kitchen manager position(s) (other than Deli Manager or Deli Assistant Department Manager) within the Deli department.

21

i.   Grocery Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Grocery department.

j.   Guest Services Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Guest Services department.

k.   Meat Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Meat department.

l.   Natural Foods Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Natural Foods or Natural & Organics department.

m.   Produce Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Produce department.

n.   Wine and Spirits Manager, however variously titled by Defendant to reference the salary-paid manager position(s) for the store's Wine and Spirits department

50.   Upon information and belief, Defendant did not perform a person-by-person analysis of the job duties of DMs when making the decision to classify them as exempt from the overtime premium pay requirements of the FLSA and WWPCL during the Relevant Periods.

51.   Based on information and belief, Defendant restricted hourly-paid employees from being scheduled to work more than 40 hours, and by decisions made above DM level Defendant willfully underfunded labor budget allotment by not allowing scheduling of enough hourly-paid department employee hours to cover all hours needed to complete the necessary manual and non-exempt tasks in the departments. Defendant's bonus program for DMs further incentivized DMs to stay within those labor budget constraints and work additional overtime hours themselves (at no additional labor cost to Defendant because DMs were not paid overtime

premiums) because avoiding hourly-paid overtime premium wage costs in that manner positively affected labor costs, a criteria upon which bonuses were determined. In addition, Defendant knew or recklessly disregarded the fact that its stores' departments were often understaffed. As a result of factors such as those highlighted herein, hourly-paid employees were not scheduled to cover all hours needed to complete the necessary manual and non-exempt tasks for the departments. Upon information and belief, Defendant knew or recklessly disregarded the fact that these restrictions (essentially resulting in underfunding store and department labor budgets) resulted in Plaintiffs and DMs (who were not paid overtime) working more than 40 hours in a workweek without incurring additional labor costs to Defendant (i.e., without receiving any additional overtime compensation), including but not limited to in order to provide additional shift coverage, which allowed Defendant to avoid paying additional wages (including both hourly wages and overtime premiums for every hour over 40 in a workweek) to the hourly-paid employees in the store's departments.

52.     Based on information and belief, Defendant knew, by virtue of the fact that their Store Directors and other personnel at reporting or in-store hierarchical management levels above DMs (as its authorized agents) actually saw Plaintiffs and other DMs perform primarily manual labor and non-exempt duties, that as a result of the underfunded labor hour restrictions the amount of money available to pay internally classified non-exempt employees to perform such work was limited (and, ultimately, insufficient). Based on information and belief, Defendant knew that Plaintiffs and other DMs were performing the same work as non-exempt employees and, based on their actual job duties, DMs (including Plaintiffs) did not fall within any FLSA or Wisconsin law overtime exemptions. Based on information and belief, Defendant was aware of its obligations under the FLSA and the laws of Wisconsin, and acted willfully

and/or recklessly in failing to classify and pay Plaintiffs and other DMs as non-exempt employees.

53.    Defendant's unlawful conduct, as described above, was willful and/or in reckless disregard of the FLSA, and accomplished through Defendant's centralized, company-wide policy, pattern, and practice of minimizing labor costs by violating the FLSA.

54.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a policy, pattern, and practice of violating the FLSA with respect to Plaintiffs and the putative Collective. This policy, pattern, and practice includes, but it is not limited to, Defendant's knowledge of its obligations and the kind of work that Plaintiffs and the putative Collective were, and have been, performing. As a result, Defendant:

a.    willfully misclassified Plaintiffs and members of the Collective;

b.    willfully failed to pay Plaintiffs and the members of the Collective overtime wages for hours they worked in excess of 40 hours per week; and

c.    willfully failed to provide enough money in its store-level labor budgets for non-exempt employees to perform their duties and responsibilities, forcing DMs to perform such non-exempt tasks.

55.    Defendant's willful violations of the FLSA are further demonstrated by the fact that during the course of the Relevant Period and continuing to the present, Defendant has failed to maintain accurate and sufficient time records for Plaintiffs and the members of the Collective. Defendant acted recklessly or in willful disregard of the FLSA by instituting a policy and/or practice that did not record the start and stop times worked by Plaintiffs and the members of the Collective, and did not allow Plaintiffs and the members of the Collective to record all hours worked.

56.     Due to the foregoing, Defendant's failure to pay overtime wages for work performed by the Collective in excess of 40 hours per workweek was willful and/or reckless, and has been widespread, repeated and consistent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiffs incorporate by reference herein the preceding paragraphs.

58.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiffs seek to prosecute his FLSA claims as a Collective Action on behalf of all persons who are or were formerly employed by Defendant as DMs and paid a salary at any time during the Relevant Period, specifically defined as:

> All current and former employees employed by Defendant in store level salary-paid grocery department manager-titled or supervisor-titled positions (Bakery, Center Store 3rd Shift, Deli, Fresh Cut, Frozen/Dairy, HBC-GM, Kitchen, Grocery, Guest Services, Meat, Natural Foods, Produce, Wine & Spirits, etc. – but specifically excluding the "HR Manager"-titled or "HR Generalist"-titled positions) in Wisconsin below the in-store hierarchical level of Store Director, and including any additional period of salary-paid work in a management training position for such DM positions (including but not limited to any weeks worked in salary-paid LEAD (Leadership Exploration and Development) or GOLD (Grocery Operations Leadership Development) training programs for DM positions), who worked more than 40 hours in any given workweek, for which they were classified and paid by Defendant as exempt from federal overtime pay laws, from three years before the date the Complaint was filed in this action until entry of judgment in this matter.

59.     Defendant is liable under the FLSA for, *inter alia*, willfully failing to pay premium overtime wages to Plaintiffs and other similarly situated employees.

60.     Upon information and belief, there are likely hundreds of similarly situated current and former DMs who have not been paid premium overtime wages in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join. Thus, notice should be sent to the Collective members pursuant to 29 U.S.C. § 216(b).

61.     The similarly situated DM employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## WISCONSIN CLASS ALLEGATIONS

62.     Plaintiffs incorporate by reference herein paragraphs 1-56.

63.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek to prosecute their WWPCL claims as a class action on behalf of the Wisconsin Class, specifically defined as:

> All current and former employees employed by Defendant in store level salary-paid grocery department manager-titled or supervisor-titled positions (Bakery, Center Store 3rd Shift, Deli, Fresh Cut, Frozen/Dairy, HBC-GM, Kitchen, Grocery, Guest Services, Meat, Natural Foods, Produce, Wine & Spirits, etc. – but specifically excluding the "HR Manager"-titled or "HR Generalist"-titled positions) in Wisconsin below the in-store hierarchical level of Store Director, and including any additional period of salary-paid work in a management training position for such DM positions (including but not limited to any weeks worked in salary-paid LEAD (Leadership Exploration and Development) or GOLD (Grocery Operations Leadership Development) training programs for DM positions), who worked more than 40 hours in any given workweek, for which they were classified and paid by Defendant as exempt from all state overtime pay laws, from two years before the date the Complaint was filed in this action until entry of judgment in this matter.

64.     The persons in the Wisconsin Class are so numerous that their joinder is impracticable and the adjudication of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, upon information and belief and as easily ascertainable from Defendant's operation of over 40 grocery stores in Wisconsin for a minimum two year period, there are hundreds of DMs who worked as salaried exempt-paid DMs in Defendant's grocery store departments within the Class Relevant Period.

65.     The number, identities, job titles, length of employment in covered positions, and rates of pay, for the Wisconsin Class members are readily ascertainable from Defendant's personnel, payroll, and other employment-related records.

66.     Notice can be provided by means permissible under Fed. R. Civ. P. 23.

26

67. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Wisconsin Class, and the relief sought is typical of the relief which would be sought by each member of the Wisconsin Class if litigated in individual, separate actions.

68. The Wisconsin Class members were subject to the same corporate policies, practices and procedures of Defendant as alleged above, which affected all Wisconsin Class members similarly causing similar losses, injuries and damages arising from the same unlawful corporate policies, practices and procedures.

69. Plaintiffs are able to fairly and adequately protect the interests of the Wisconsin Class and have no interests in conflict with the interests of the Wisconsin Class.

70. Plaintiffs are represented by counsel who is experienced and competent in both collective/class action litigation and employment litigation and has previously represented plaintiffs in wage and hour class and collective action litigation, and in particular, cases alleging company-wide misclassification of grocery chain department managers.

71. There are questions of law and fact common to the Wisconsin Class and such questions predominate over questions solely affecting individual members of the Class (for example, whether Defendant has misclassified DMs as exempt from the overtime provisions of the WWPCL).

72. Plaintiffs' claims are typical of the claims of the Wisconsin Class, Plaintiffs are adequate representatives to fairly prosecute the interests of the Class, and Plaintiffs have retained competent counsel to advance the interests of the Class.

73. A class action in superior to other methods of adjudicating the WWPCL misclassification and failure to pay wages claims set forth in this case, including but not limited to because individual class members may lack the financial resources to vigorously prosecute

individual lawsuits against this well-funded corporate Defendant, and may be disinclined to assert their rights individually because their individual damages may be small in comparison to the expenses and burdens of individual litigation; important public interests are well served by adjudicating this matter as a class action; adjudicating individual litigation claims would result in inefficient expenditure of Court, party, and public resources, whereas proceeding as a class allows for a significant saving of such costs and resources; adjudicating separate actions by individual members of the Wisconsin Class creates a risk of inconsistent and/or contradictory rulings with respect to the individual members of the Wisconsin Class, potentially resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action; and courts have readily acknowledged that employees (particularly those who rely on Defendant for their employment at the time of deciding whether to assert protected WWPCL rights) are often afraid to assert their rights out of fear of direct or indirect retaliation or blacklisting, but class treatment provides Wisconsin Class members not named in the case style a degree of anonymity (including online search anonymity) which allows for the vindication of their WWPCL rights while reducing these reputational or retaliation risks.

### FIRST CAUSE OF ACTION
### (FLSA: UNPAID OVERTIME WAGES)
### (Brought on Behalf of Plaintiffs and All Collective Action Members)

74.     Plaintiffs, on behalf of himself and all Collective members, re-allege and incorporate by reference paragraphs 1 through 61 as if they were set forth again herein.

75.     During the Relevant Period, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

76.     During the Relevant Period, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

77.     During the Relevant Period, Defendant employed Plaintiffs, and employed (or as applicable for currently employed DMs, continues to employ), each of the Collective members within the meaning of the FLSA.

78.     Defendant has engaged in a widespread pattern and practice of violating the FLSA, as described in this Complaint.

79.     The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to Defendant.

80.     During the Relevant Period continuing to the present, Defendant has had a policy and practice of refusing to pay premium overtime compensation to its DMs for hours worked in excess of 40 hours per workweek.

81.     As a result of Defendant's willful failure to compensate its DMs, including Plaintiffs and the Collective members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

82.     As a result of Defendant's willful failure to record time and compensate its employees, including Plaintiffs and the Collective members, Defendant failed to make, keep,

and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

83.    As a result of Defendant's policy and practice of minimizing labor costs by underfunding labor budgets for their stores, Defendant knew or recklessly disregarded the fact that Plaintiffs and the Collective members were primarily performing manual labor and non-exempt tasks.

84.    Due to Defendant's (a) failure to provide enough labor budget funds, (b) failure to take into account the impact of the underfunded labor budgets on the job duties of Plaintiffs and the Collective members, (c) actual knowledge, through their store-level and district managers that the primary duties of Plaintiffs and the Collective members were manual labor and other non-exempt tasks, (d) failure to perform a person-by-person analysis of Plaintiffs' and the Collective members' job duties to ensure that they were performing exempt job duties, (e) policy and practice that did not allow Plaintiffs and Collective members to record all hours worked, Defendant knew and/or showed reckless disregard that its conduct was prohibited by the FLSA. 29 U.S.C. § 255(a).

85.    As a result of Defendant's FLSA violations, Plaintiffs, on behalf of themselves and the Collective members, are entitled to (a) recover from Defendant their unpaid wages for all of the hours worked by them, as premium overtime compensation; (b) recover an additional, equal amount as liquidated damages for Defendant's willful violations of the FLSA; and, (c) recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

86.     Defendant's violations of the FLSA have been willful, thus a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**SECOND CAUSE OF ACTION**
**(WWPCL: UNPAID OVERTIME WAGES AND RELATED DAMAGES)**
**(Brought on Behalf of Plaintiffs and the Wisconsin Class)**

87.     Plaintiffs, on behalf of himself and the putative Wisconsin Class, re-alleges and incorporates by reference paragraphs 1–56 and 62-73 as if they were set forth again herein.

88.     During the Class Relevant Period, Plaintiffs and each of the putative Wisconsin Class members were "employees" of Defendant within the meaning of the WWPCL, and Defendant was an "employer" operating a mercantile business within the meaning of the WWPCL, as those terms, or variations thereof, are used in Wis. Stat. §§ 109.01 et seq., 103.01 et seq., and Wis. Admin. Code § DWD 272.01, and elsewhere as applicable to the WWPCL claims.

89.     Defendant misclassified Plaintiffs and the putative Wisconsin Class members as exempt from the overtime provisions of the WWPCL and failed to pay them overtime premiums for hours worked in excess of 40 in a workweek.

90.     Plaintiffs and the putative Wisconsin Class members regularly worked more than 40 hours in a workweek without being paid overtime premium wages.

91.     Plaintiffs and the putative Wisconsin Class members are entitled, pursuant to the WWPCL including but not limited to Wis. Stat. § 109.01 et seq., to receive actual damages in the amount of all unpaid overtime wages, and all agreed upon wages that were earned but not paid within 31 days of working at any time during the Class Relevant Period, owed by Defendant.

92.     Defendant engaged in wrongful withholding of Plaintiffs' and the Wisconsin Class members' overtime premium wages for dilatory or other unjust reasons; therefore, under Wis.

31

Stat. § 109.11, Plaintiffs and the putative Wisconsin Class request and should be awarded liquidated damages equal and up to fifty percent (50%) of the unpaid wages owed.

93.     Plaintiffs and the putative Wisconsin Class members are also entitled to receive pre- and post-judgment interest on all unpaid overtime wages owed by Defendant.

94.     Plaintiffs and the putative Wisconsin Class members are also entitled, pursuant to WWPCL, to an award of reasonable attorneys' fees, expert fees, expenses, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Collective members and Wisconsin Class Action Members are entitled to and pray for the following relief:

a.      Designation of this action as an FLSA collective action on behalf of Plaintiffs and the Collective members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), to all similarly situated members of the Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents pursuant to 29 U.S.C. § 216(b);

b.      Certification of this action as a class action on behalf of Wisconsin Class members and prompt issuance of a notice to all similarly-situated persons, apprising them of the pendency of this action, permitting them to opt-out or to be bound by any judgment in the matter;

c.      A declaratory judgment that the practices complained of are unlawful under the FLSA and WWPCL;

d.      An injunction requiring Defendant to cease its unlawful practices;

e.      An award of unpaid wages for all hours worked in excess of 40 hours in a workweek, at a rate of one and one-half times the regular rate of pay, and

additionally under the WWPCL any agreed-upon wages not paid within 31 days of working;

f.     An award of liquidated damages under the FLSA to Plaintiffs and Collective Action members as a result of Defendant's willful failure to pay for all hours worked in excess of 40 hours in a workweek, at a rate of one and one-half times the regular rate of pay pursuant to 29 U.S.C. § 216;

g.     An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

h.     Under Wis. Stat. § 109.11, an award of liquidated damages equal and up to fifty percent (50%) of the unpaid wages owed to Plaintiffs and the putative Wisconsin Class;

i.     An award of prejudgment and post-judgment interest;

j.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees and an award of a service payment to the named Plaintiffs if allowed by the Court; and

k.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FED. R. CIV. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: April 24, 2025          By:    s/ C. Andrew Head
                                      C. Andrew Head
                                      Bethany Hilbert
                                      Head Law Firm, LLC
                                      4422 N. Ravenswood Ave.
                                      Chicago, IL 60640
                                      Tel:  (404) 924-4151
                                      Fax: (404) 796-7338

Email: ahead@headlawfirm.com
        bhilbert@headlawfirm.com

***Attorneys for Plaintiffs, the Collective, and the Wisconsin Class***