IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEREMY DYER, STEVEN WETZEL, and JAMES JU,
individually on behalf of all others similarly situated,

                        Plaintiff,                              OPINION and ORDER

        v.                                                     25-cv-322-jdp

SKOGEN'S FOODLINER, INC. d/b/a FESTIVAL
FOODS,

                        Defendant.

---

Plaintiffs were department managers for Skogen's Foodliner, Inc., which does business under the name Festival Foods and operates more than 40 stores across Wisconsin. Plaintiffs contend they are entitled to overtime pay under the Fair Labor Standards Act (FLSA) and state labor laws because Festival misclassified them as salaried employees who are exempt from the requirements of those laws. Plaintiffs' theory is that they are not really managers. Rather, plaintiffs say that their work focuses on customer service and manual labor, and they do not exercise the type of authority and discretion that would make them exempt from overtime requirements.

Plaintiffs seek to represent a collective under the FLSA and a class under Federal Rule of Civil Procedure 23 of similarly situated employees who they believe should have been classified as hourly workers subject to wage-and-hour laws. Plaintiffs move for approval of a notice to be sent to their proposed collective. Dkt. 22.

Plaintiffs' proposed collective is broad, covering all department managers in Wisconsin. But the evidence submitted by the parties suggests that Festival's managers have similar responsibilities across different departments and stores. So the court concludes that plaintiffs

have met the standard for sending notice to employees. At the certification stage, the court will reevaluate the evidence on the question whether employees who opted in to the class are actually similarly situated.

ANALYSIS

Plaintiffs' motion raises two issues: (1) whether to approve notice to the proposed collective; and (2) whether to approve the content of the proposed notice and the methods for sending it.

## A. Whether to approve notice

The primary question raised by plaintiffs' motion is whether the court should authorize plaintiffs' counsel to send notice of this lawsuit to other Festival employees. Plaintiffs' description of the employees whom plaintiffs wish to notify is, to say the least, a mouthful:

> All current and former employees employed by Defendant in store level salary-paid manager-titled or supervisor-titled positions (including salary-paid assistant manager-titled or assistant supervisor-titled positions) in Wisconsin below the in-store hierarchical level of Store Director (in departments/areas including Bakery, Center Store, Deli, Food Court (or Caribou), Fresh Cut, Frozen/Dairy, HBC-GM, Kitchen or Deli Kitchen, Grocery, Guest Services, Meat, Natural Foods (or HBC-Natural Foods, or Natural & Organic), Produce, Receiving, and Wine and Spirits, etc., and including any additional period of salary-paid work in a training position/training period for such positions (including but not limited to any weeks worked in salary-paid Emerging Leader, LEAD (Leadership Exploration and Development) or GOLD (Grocery Operations Leadership Development) training programs for such positions), for which they received a salary during the period beginning May 28, 2022 until entry of judgment in this case, paid by Defendant as if exempt from federal overtime pay laws, (but excluding Assistant Store Director, Human Resources-titled ("HR Manager" or "HR Generalist") positions, and (after April 2025 restructuring only) Senior (or "Sr.") Center Store Manager (or "Director"), or Senior

> (or "Sr.") Fresh Foods Manager (or "Director")) (collectively "DMs" or the "Collective").

Dkt. 41, at 2.[1] The TLDR of this lengthy and complicated list is more straightforward: department managers, assistant department managers, and those training to become such managers. The more convoluted phrasing by plaintiffs appears to be an attempt to be comprehensive and precise so that superficial differences in job titles do not prevent otherwise similarly situated employees from receiving notice. Mercifully, plaintiffs' proposed notice defines the collective in a more straightforward manner:

> All current and former employees who worked in salary-paid department manager/supervisor positions below the Store Director/Assistant Store Director level at a Festival Foods store location anywhere in Wisconsin, at any time during the period beginning May 28, 2022 through the final disposition of this matter.

Dkt. 41-1.

Plaintiffs' request for court-approved notice is based on 29 U.S.C. § 216(b), under which plaintiffs may file "collective actions" with "other employees similarly situated" against employers to recover unpaid compensation. The court will begin with an overview of the legal standard for determining whether employees are similarly situated, followed by an application of the standard to the facts of this case.

### 1. Overview of the legal standard

Collective actions under the FLSA bear some similarity to class actions under Federal Rule of Civil Procedure 23 in that both are procedural mechanisms for collectively resolving a large number of similar claims in one lawsuit. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d

---

[1] Citations to documents filed on the docket reflect the page numbers as they appear on the headers in the court's electronic case file, not the page numbers on the documents themselves.

770, 772 (7th Cir. 2013). But there is a key difference between a class action and a collective action. In class actions, class members are virtually represented by the named plaintiffs and are bound by the judgment unless they opt out of the class. In collective actions, the default rule is reversed: potential members of the collective must affirmatively opt in to the case by filing a notice of consent to join. *See Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 724 (7th Cir. 2024). This aspect of collective actions creates a challenge for plaintiffs' counsel: how do they identify other similarly situated employees? *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) provided one answer, which is to send out a notice approved by the court. But *Hoffman-LaRoche* did not set forth a standard for authorizing notice or for determining when employees are similarly situated.

Many courts, including this one, have applied a two-step approach for determining whether members of a proposed collective are similarly situated. At the first step, which courts have called "conditional certification," the question is whether the plaintiffs have made a "modest factual showing" that they and potential collective members were subject to a common policy or practice related to their claims under the FLSA. *See, e.g., Wallis v. Oz Mgmt. Grp., Inc.*, No. 21-cv-290-jdp, 2022 WL 2452628, at *1 (W.D. Wis. July 6, 2022); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628–29 (W.D. Wis. 2009). If the plaintiffs meet that standard, the court authorizes the plaintiffs to send notice of the claims to the collective's members. *De Leon v. Grade A Constr. Inc.*, No. 16-cv-348, 2017 WL 1957537, at *2–3 (W.D. Wis. May 11, 2017).

At the second step, the defendants can move for "decertification," at which point the court uses the facts developed in discovery to re-evaluate whether the members of the collective are similarly situated. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 358 (W.D. Wis. 2014). At that stage, the court applies a more demanding standard that is akin to the one

applied for class actions. *See Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-jdp, 2018 WL 1175412, at *2 (W.D. Wis. Mar. 6, 2018) (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)).

Many district courts in this circuit followed a similar approach for many years without guidance from the Court of Appeals for the Seventh Circuit. That changed with *Richards v. Eli Lilly & Co.*, 149 F.4th 901 (7th Cir. 2025), in which the court of appeals decided for the first time how district courts should determine whether members of a proposed collective are similarly situated. Relevant to this case, the court of appeals offered the following observations, guided by its understanding of *Hoffmann-LaRoche*.

First, it is generally within the district court's discretion to divide the similarly situated determination into two steps, with the first step authorizing notice and the second step certifying a collective. *Id.* at 910–11. But the two-step approach is not always required or even appropriate. For example, the court may collapse the two steps into one "if the court is confident that a similarity dispute can be resolved by a preponderance of the evidence before notice." *Id.* at 913–14.

Second, the terms "conditional certification" and "decertification," often used by the courts to describe steps one and two, are misnomers. *Id.* at 907. At the first step, the court is not certifying anything, only authorizing plaintiffs' counsel to send notice to a proposed collective. It follows that there is no collective to "decertify" at the second step. *Id.* In light of this clarification, this court will refer to the first step as approving notice rather than as conditional certification.

Third, the court of appeals concluded that the standards adopted by other courts for authorizing notice were unworkable and inconsistent with *Hoffmann-La Roche*. *Id.* at 910–11.

5

As for the "modest factual showing" standard, the court characterized it as an "overly permissive notice standard" that requires courts to authorize notice in almost all cases, leading to "[s]ending notice to plaintiffs who are ineligible to join the collective" and "plac[ing] a judicial thumb on the plaintiff's side of the case." *Id.* (internal quotation marks omitted). The court also rejected standards from the Fifth Circuit and Sixth Circuit requiring plaintiffs to prove similarity by a preponderance of the evidence or by a "strong likelihood." *Id.* at 911–12 (citing *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021), and *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023)). The court reasoned that such "heightened standards" would impose "an insurmountable barrier for even meritorious collective actions" because they would preclude notice in situations in which "the evidence necessary to establish similarity resides with yet-to-be-noticed plaintiffs." *Richards*, 149 F.3d at 911.

After rejecting the notice standards from other courts, the Court of Appeals for the Seventh Circuit adopted its own standard:

> [W]e conclude that to secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated. By this, we mean that a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy. A plaintiff's evidence of similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence.

*Id.* at 913.

This standard appears to be in line with the standard applied by this court in past cases. Although this court had adopted the "modest factual showing" standard, the application of that standard was not toothless. For example, in *Brink v. American Family Mutual Insurance Co.*,

6

*S.I.*, No. 24-cv-562-jdp, 2025 WL 1473093 (W.D. Wis. May 22, 2025), which was decided before *Richards*, the court denied a motion to conditionally certify a collective of customer service representatives because the declarations submitted by the plaintiffs were conclusory and they did not meaningfully respond to evidence submitted by the employer suggesting that members of the proposed collective did not perform their jobs in the same way. As instructed by the court of appeals in *Richards*, this court has considered "the extent to which plaintiffs engage with opposing evidence" and whether the plaintiffs' evidence creates a material factual dispute. That is all to say that the court views its past cases as instructive, even after *Richards*.

## 2. **Similarly situated analysis**

When determining whether a proposed collective is similarly situated for the purpose of an FLSA claim, the court must begin with an understanding of what the claim is, along with any potential defenses. After all, the question is not simply whether the employees are similar in the abstract; rather, it is whether they are similar in ways so that it makes sense to decide their claims in the same lawsuit. *See Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 439–40 (W.D. Wis. 2008).

In this case, plaintiffs' claim is that Festival is failing to pay them the overtime rate when they work more than 40 hours a week, as required by the FLSA. 29 U.S.C. § 207(a)(1). Festival admits that it does not pay plaintiffs overtime, but it says that it does not have to because plaintiffs' work falls into FLSA exemptions for "executive" or "administrative" positions or a combination of the two. *See* 29 U.S.C. § 213(1).

The FLSA doesn't define what "administrative" or "executive" work is under § 213(1), but Department of Labor (DOL) regulations do.[2] Administrative work includes two requirements: (1) the employee's "primary duty" is "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (2) the "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Executive work includes three requirements: (1) the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (2) the employee "customarily and regularly directs the work of two or more other employees;" and (3) the employee has the "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100.[3] Employees may also qualify as exempt if their "primary duty involves a combination of exempt administrative and exempt executive work." 29 C.F.R. § 541.708.

---

[2] Both sides assume that DOL regulations defining FLSA exemptions remain binding, even after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) limited the deference that courts may give agency interpretations of statutes. Deference may still apply when Congress expressly delegates authority to the agency on the matter at issue. *Id.* at 394–96. The FLSA gives DOL the authority to "define[ ] and delimit[ ]" the terms of an exemption, 29 U.S.C. § 213(a)(1), so it appears that deference is still appropriate. *See Mayfield v. United States Dep't of Lab.*, 117 F.4th 611, 617–18 (5th Cir. 2024) (agency's determination regarding scope of exemption still entitled to deference after *Loper Bright*). In any event, no party raises this issue, so the court need not decide it now.

[3] The DOL regulations also include a minimum salary as a requirement for executive and administrative work. *See* 29 C.F.R. § 541.100(a)(1); 29 C.F.R. § 541.200(a)(1). Neither side suggests there are any relevant differences among the salaries of the employees in the proposed collective for the purpose of determining whether they qualify for an exemption, so the court will not consider that issue.

Based on these regulations, key questions for the similarly situated analysis will be whether the proposed collective members have sufficiently similar "primary duties" and whether they have sufficiently similar authority over other employees. DOL defines "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The agency elaborates as follows:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

> . . . . The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

*Id.* § 541.700(a)–(b). Thus, key factors in determining an employee's primary duties are the amount of time spent on those duties and the relative importance of those duties.

The court's next task is to evaluate the evidence submitted by the parties regarding whether the employees in the proposed collective are similarly situated (and whether it is appropriate to send notice). The proposed collective is broad, spanning more than 40 stores, most departments within those stores, different levels of management (managers, assistant managers, and manager trainees), and a time frame that straddles some management

restructuring in April 2025. But plaintiffs say that Festival's management hierarchy is tightly constrained by corporate policies and procedures, that different stores and different departments are run the same way, that both managers and assistant managers perform mostly nonexempt work, and that the restructuring did not significantly affect the responsibilities of the proposed collective.

To support their contentions, plaintiffs rely primarily on testimony of former (and some current) department managers and assistant managers, Dkts. 26–40, and Festival's job descriptions for many of the department manager positions. Dkt. 25-2 and Dkt. 25-3. As for the job descriptions, plaintiffs say that they "do not vary in any material way between the various department manager positions." Dkt. 41, at 10. Plaintiffs summarize the descriptions as identifying the same general duties and requirements for each position. They also summarize job descriptions for store directors and human resource managers as evidence that they were the ones primarily responsible for management of the stores and employees.

As for the declarations, they are from 15 current and former department managers who worked in 12 different positions at 16 different Festival stores, acted as a substitute department manager at 15 additional Festival stores, and observed other department managers while the declarant was working an hourly position at 2 additional stores. Plaintiffs summarize the following testimony in their brief:

- Department managers consistently worked more than 40 hours in a week. Dkt. 41, at 13 (citing eight declarations).

- All of the stores had the same management hierarchy, with department managers at the bottom of the hierarchy. *Id.* at 13,19 (citing 15 declarations).

- Department managers spent most of their time performing manual labor and customer service. *Id.* at 14 (citing 15 declarations).

10

- The amount of hours that department managers could schedule hourly workers was tightly constrained, so the managers often had to complete tasks of the hourly workers. *Id.* at 14 (citing 13 declarations). The amount of labor hours allotted to a department did not distinguish between a manager and an hourly worker. *Id.*

- During weekly meetings, department managers received instructions from higher-ranking officers regarding promotions, new products, and merchandising. *Id.* at 16 (citing 14 declarations).

- Standard operating procedures governed many aspects of the department manager's job. *Id.* (citing one declaration).

- Department managers went through the same training programs regardless of store location. Department managers transferred stores or subbed for department managers in other stores without requiring additional training. *Id.* at 17–18 (citing seven declarations).

This is the type of evidence that numerous district courts have relied on when authorizing FLSA notice in other cases involving grocery store managers, including in one case

decided in the Seventh Circuit after *Richards*.[4] Plaintiffs did not submit declarations from employees in every store and in every position included in the collective, but the experience of the employees who did submit declarations is broad enough to infer in the absence of contrary evidence that their experience is representative of the collective, at least for the purpose of approving notice.

Festival does not dispute plaintiffs' summary of their evidence, and it cites no cases involving similar facts and evidence in which the court did not approve notice. Instead of case law, Festival cites declarations of nearly 50 Festival employees who are department managers or store directors. Dkts. 44–92. Festival also submits the expert report of Robert Crandall, who

---

[4] *See Gower v. Roundy's Supermarkets Inc.*, No. 24 C 9346, 2025 WL 3537391, at *3–4 (N.D. Ill. Dec. 10, 2025) (employee testimony that managers are subject to the same hierarchy and perform the same duties as hourly workers); *see also Vye v. Hannaford Bros. Co., LLC*, No. 2:24-CV-00339-NT, 2025 WL 2640068, at *4 (D. Me. Sept. 15, 2025) (employee testimony that department managers were all classified as exempt, were not paid overtime, and primarily performed the same manual work as hourly employees); *Dempsey v. Smith's Food & Drug Centers, Inc.*, No. 3:24-CV-00269-ART-CSD, 2025 WL 326644, at *6–7 (D. Nev. Jan. 28, 2025) (employee testimony that most of the work that they performed was comprised of non-exempt tasks); *Fitch v. Giant Eagle Inc.*, No. 2:18-CV-01534-RJC, 2020 WL 8620076, at *4 (W.D. Pa. Oct. 28, 2020), *report and recommendation adopted*, No. 218CV01534RJCCRE, 2021 WL 704147 (W.D. Pa. Feb. 23, 2021) (employee testimony that team leaders were are salaried, subject to the same policies, and spent most of their time providing customer service and performing manual labor); *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 778 (N.D. Ind. 2021) (declarations that store managers were salaried, regularly worked more than 40 hours per week, and primarily performed non-managerial tasks); *DePyper v. Roundy's Supermarkets, Inc.*, No. 20-cv-2317, 2020 WL 6565225, at *3 (N.D. Ill. Nov. 9, 2020) (employee declarations that they did not perform managerial duties); *Aiuto v. Publix Super Markets, Inc.*, No. 1:19-CV-04803-LMM, 2020 WL 2039946, at *6 (N.D. Ga. Apr. 9, 2020) (16 employee declarations that department managers primarily performed non-exempt work and were subject to the same policies); *Kujat v. Roundy's Supermarkets Inc.*, No. 18 C 5326, 2019 WL 1953107, at *3 (N.D. Ill. May 2, 2019) (employee testimony that managers had same responsibilities and were subject to the same corporate policies); *Davine v. Golub Corp.*, No. CIV.A. 14-30136-MGM, 2015 WL 1387922, at *2–3 (D. Mass. Mar. 25, 2015) (employee declarations that they worked within identical hierarchical structures, consistently worked more than 40 hours, and had same types of responsibilities, even when transferring stores).

"perform[s] economic and statistical analyses in connection with litigation matters." Dkt. 90, at 4.[5] But most of Festival's arguments about this evidence are focused on whether department managers' primary duties are covered by the administrative and executive exemptions. For example, Festival contends that its policies "are not unlawful," and its "lawful policies and job descriptions do not support misclassification." Dkt, 42, at 34, 37. But those are not the questions before the court. The question is whether there is enough evidence to show at least a material factual dispute that the proposed collective is similarly situated so that notice to the collective should be approved, not whether Festival is entitled to summary judgment on the merits. The court of appeals made this clear in *Richards*: "[T]he question [is] whether common issues of fact or law make it more efficient to resolve plaintiffs' claims together. This inquiry should not devolve into an early adjudication of the merits." 149 F.4th at 914–15. The district court may consider merits issues only if doing so is necessary to also determine whether employees are similarly situated. *Id.*

In this case, Festival's position is not that some department members are exempt and some are not. Festival does not point to differences between the ways different stores operate or to any meaningful differences in the level and type of responsibility of the employees who submitted declarations for Festival. Plaintiffs acknowledge that there was a restructuring of positions in 2025, but Festival does not contend that the restructuring significantly changed the responsibilities of proposed collective members. Rather, Festival's position is that all members of the collective are properly classified as exempt.

---

[5] Plaintiffs object to Randall's report as procedurally improper because they did not have an opportunity to depose Randall, and he relies on evidence they did not have access to. This is a fair point, but the court need decide whether to disregard the report on procedural grounds because the report will not change the outcome of the motion even if the court considers it.

It is not even clear whether there are material disputes between Festival's declarations and plaintiffs' declarations regarding the types of responsibilities they perform. The difference seems to be about what the employees emphasize. In the declarations submitted by plaintiffs, the employees emphasize department managers' responsibilities related to manual labor and customer service; in the declarations submitted by Festival, the employees emphasize department managers' managerial responsibilities. But none of the employees deny that department managers have both types of responsibilities, and the parties do not identify any direct disputes over the types of responsibilities they perform and how often. The real dispute appears to be a legal one, which is whether the type of work the department managers do qualifies for an exemption. If Festival is correct that its department managers' primary duties are administrative, executive, or combination of both, that is an issue that can be decided collectively, so it does not counsel against sending notice to the collective.

Festival's expert, Robert Crandall, does identify differences among the positions listed in the proposed collective. For example, he says that each department involves different responsibilities, different numbers of employees, and different labor hours and that each manager receives a different salary. Dkt. 90, at 5–6. But missing from the report or Festival's brief is any explanation of why these differences matter. As already discussed, a defendant cannot defeat a motion to send notice simply by pointing to differences of any kind among the proposed collective members. Rather, the important question is whether there are differences among the employees that would make it impractical to resolve the claims collectively. *See Spoerle*, 253 F.R.D. at 439–40. Neither Festival nor Crandall explain how the differences in the number of employees, labor hours, or salaries would matter to the question of whether department managers qualify for the administrative or executive exemption. Differences in

14

responsibilities could be relevant to that issue, but Crandall simply lists differences without explaining how they are relevant to the exemption. *See* Dkt. 90, at 21–28. Of course, a bakery manager is not involved in slicing meat, and the deli manager is not involved in baking bread. But Crandall does not point to differences among department managers suggesting that some of them perform significantly more or less administrative or executive work than others. *See Vye,* 2025 WL 2640068, at *4 (approving notice for managers of different departments despite differences in specific tasks performed in each department). So the court concludes that plaintiffs have presented sufficient evidence of similarity to authorize notice to the proposed collective.

Festival objects that notice is not appropriate because "at least 48" (out of approximately 730) department managers signed separation agreements in which they released all claims against Festival. Dkt. 42, at 26. Festival cites *Loch v. American Family Mutual Insurance Co.*, in which the court held that employees who had signed severance agreements were not similarly situated to employees without such agreements. No. 22-cv-213-jdp, 2023 WL 2877598, at *3 (W.D. Wis. Mar. 3, 2023). This is consistent with the rule that named plaintiffs may be inadequate class representatives if they are subject to different defenses from the rest of the class. *See Santiago v. City of Chicago*, 19 F.4th 1010, 1018–19 (7th Cir. 2021). But *Loch* did not hold that employees cannot proceed as a collective if any employee has a side agreement with the employer. In fact, the court concluded that notice to the collective was appropriate, holding only that employees with severance agreements could not be included in the collective. 2023 WL 2877598, at *3.

In this case, Festival has not produced a signed agreement from any employee, alleged that any of the named plaintiffs signed a separation agreement, or even identified which

employees signed an agreement. In *Bigger v. Facebook, Inc.*, the court held that "[t]he employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." 947 F.3d 1043, 1050 (7th Cir. 2020). *Bigger* was about arbitration agreements rather than separation agreements, but Festival identifies no reason why the rule should be any different based on the type of agreement. In both situations, the question is whether an agreement bars an employee from participating. Festival ignores *Bigger*, even though plaintiffs relied on the case in their opening brief.

Festival has failed to identify anyone in the proposed collective who should not receive notice, so the court will not exclude anyone at this time. At the certification stage, Festival may seek to exclude any employee who is subject to a separation agreement. But Festival will need to be prepared to explain why the appropriate response is not to create a separate collective rather than simply exclude those employees or deny certification. *See Alvarez v. City of Chicago*, 605 F.3d 445, 448–51 (7th Cir. 2010).

Plaintiffs should not construe the court's approval of notice to mean that certification of a class or collective is a foregone conclusion. A determination whether a position is exempt requires "a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). So it remains to be seen whether a more complete record will reveal that individual differences overwhelm any similarities. Other courts have refused to certify classes of store managers across different departments and locations when deposition testimony revealed that there was variation among the managers regarding the amount of executive and administrative work they performed. *See, e.g., DePyper v. Roundy's Supermarkets Inc.*, No. 20 C 2317, 2025 WL 2430460,

16

at *6–8 (N.D. Ill. Aug. 22, 2025) ("The current record reflects that the 'primary duty' inquiry—and any other individualized elements present within the FLSA's exemptions—cannot be answered in this dispute without an analysis into a specific department manager's work routine."); *Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2023 WL 3648684, at *9–10 (D. Colo. May 25, 2023) ("The opt-ins' (and named Plaintiff's) discovery responses and testimony reveal material disparities in the extent of management that they engaged in.").

At the certification stage, plaintiffs will have to show that it is feasible to decide the exemption issue across the whole class and collective. *See Richards*, 149 F.4th at 912 ("[P]laintiffs must establish their similarity at the certification stage by a preponderance of the evidence.").[6] For example, plaintiffs will have to show that both managers and assistant managers are appropriately grouped together as well as managers across departments and stores. If they cannot do that, they will have to consider whether a narrower class and collective are appropriate. At this point, however, the evidence is sufficient to approve notice to the proposed collective.

## B. Whether to approve content and methods of notice

Plaintiffs have submitted a proposed notice to be sent to the members of the proposed collective. Dkt. 44-1. Defendants object to both the content of the notice and the proposed methods for disseminating it.

---

[6] In a concurring opinion, Judge Hamilton stated the court's statements regarding the burden at the certification stage were dicta because they were not part of the issues on review. *Richards*, 149 F.4th at 915. Even if that is correct, this court will follow reasoned guidance provided by the court of appeals, even if it is technically nonbinding, in the absence of compelling reasons not to.

### 1. Content of notice

The court reviewed the content of the notice and will require only two changes. First, both the proposed mail and text notices state that the court has "ordered" that the notice be sent. Dkt. 41-1, at 2, 7. Those are misstatements. The court has granted plaintiffs' request to send notice, but it has not ordered them to do so. So the word "ordered" should be changed to "authorized."

Second, the notice includes the following sentence: "The Court has conditionally allowed or 'certified' this lawsuit as a collective action, which may affect you." *Id.* at 3. That is another misstatement. As already discussed, *Richards* explained that "conditional certification" is a misnomer: the court has approved notice, it has not certified a collective, conditionally or otherwise. Plaintiffs should remove that sentence. Other portions of the notice explain that the court has authorized the notice, so the sentence about conditional certification can be deleted without replacement.

The court will overrule Festival's other objections to the notice. First, Festival objects to sending notice to employees going back three years because a three-year statute of limitations applies only to willful violations, something that "Plaintiffs have not shown." Dkt. 42, at 48. That is more of an objection to scope of the collective rather than the content of the notice, but, either way, it is a merits issue, so it is premature to consider it now. Plaintiffs have alleged willful violations in their complaint, which is all they were required to do at this point. *Luna Vanegas v. Signet Builders, Inc.*, No. 21-cv-54-jdp, 2023 WL 4926237, at *10 (W.D. Wis. Aug. 2, 2023). If Festival believes that plaintiffs cannot prove willfulness, Festival can move for summary judgment on that issue.

Second, Festival objects to sending notice to anyone with a separation agreement. The court has already addressed that issue: Festival has not identified anyone who entered a separation agreement, so that issue will have to be addressed at the certification stage.

Third, Festival contends that the notice does not make it sufficiently clear that the court has not taken a position on the merits. But the notice states in bold letters that it "is not an expression by the Court of any opinion concerning the alleged claims." Dkt. 41-1, at 5. Festival does not explain why that language is inadequate.

Fourth, Festival contends that employees should be warned that they may have discovery obligations if they join the lawsuit. The court has previously rejected this argument, both because it is misleading ("[a]n employee could be required to sit for a deposition or turn over documents regardless whether she joins the lawsuit," *Reilly v. Century Fence Co.*, No. 18-cv-315-jdp, 2018 WL 6573460, at *9 (W.D. Wis. Dec. 13, 2018)), and because the proposed language could be viewed as a deterrent to join the lawsuit ("[p]arading a list of unpleasant consequences may chill otherwise legitimate interest in joining this collective action," *Campeau v. NeuroScience, Inc.*, 86 F. Supp. 3d 912, 920 (W.D. Wis. 2015)). Festival does not acknowledge the court's prior rulings or explain why the court should reach a different conclusion in this case.

Fifth, Festival says that the notice fails to "fully explain Plaintiffs' counsel's contingency fee arrangement or that opt-ins could owe fees." Dkt. 42, at 49. The proposed notice includes the following information about these issues:

> Plaintiffs' attorneys are representing the Plaintiffs, and will represent you, free of charge which means you will not have to pay anything to the attorneys whether the case is successful or not. If the case is successful, the Court can order the Defendant to pay the reasonable costs and attorneys' fees of your attorneys. The Plaintiff's attorneys listed above will pay all the costs

> associated with this case and will only receive fees and reimbursement of costs if there is a settlement or judgment. Should Plaintiffs succeed at trial, Defendant will be statutorily required to pay Plaintiffs attorneys' fees. Should the Parties settle this matter, Plaintiffs' attorneys' fees may be paid as a percentage of the settlement amount.

Dkt. 41-1, at 5. This language explains how the attorneys will be paid and is comparable to language that the court has approved in other cases. *See, e.g., Loch v. Am. Fam. Mut. Ins. Co.*, No. 22-cv-213-jdp, 2023 WL 3180859, at *3 (W.D. Wis. May 1, 2023). Festival does not explain what part of this passage is inadequate, and it does not propose any alternative language. Telling employees that that they could "owe" fees is unnecessary because counsel has represented that it will pay all costs associated with the case and will only collect fees from a judgment or settlement. *See Reilly*, 2018 WL 6573460, at *9.

Sixth, Festival says that the notice "fails to accurately articulate Defendant's litigation position." Dkt. 42, at 49. The notice states the following about Festival's position: "Defendant denies Plaintiffs' allegations. Defendant contends that Plaintiffs and the other current and former salary-paid managers/supervisors below Store Director level have been, and continue to be, properly paid under the FLSA." Dkt. 41-1, at 3. Festival neither explains why that statement is deficient nor offers alternative language, so the court will not require a change.

Seventh, Festival says that the notice fails to explain that employees may retain their own lawyers. That is inaccurate. The notice states: "You have the right to retain and consult with an attorney of your own choosing at your expense on whether to opt into the lawsuit, and you are free to take action on your own." *Id.* at 5. Again, Festival does not explain why that language is inadequate.

If the court overrules its objections, Festival asks for an opportunity to "meet and confer [with plaintiffs] over the proposed notice" and to present any disputes to the court. Dkt. 42,

at 51. But *this* was Festival's opportunity to present any disputes to the court. Festival identifies no reason why additional conferring or briefing is necessary.

### 2. Methods of notice

The parties dispute three issues related to the method of notice. First, Festival objects to plaintiffs sending notice by mail, email, and text message, stating that three types of notice are "excessive" and "amount[] to solicitation." Dkt. 42, at 50. The court will overrule this objection. The purpose of notice is to reach all of the intended recipients. Many of the individuals in the proposed collective are no longer Festival employees, so residential addresses could be outdated. On the other hand, spam filters could block notice sent by email or text message. Using multiple types of notice better ensures that all potential class members will have an opportunity to decide for themselves whether to opt in. The number of methods employed does not change the content of the notice, and none of the methods are intrusive, so the likelihood of perceived solicitation is low. The court has approved all three types of notice in past cases. *Loch*, 2023 WL 3180859, at *3.

Second, Festival objects to the inclusion of a link in the proposed text message. The link allows the recipient to opt in online, using individualized login credentials. Festival says that "courts have criticized [similar links] as unduly suggestive." Dkt. 42, at 50. But Festival does not identify any examples of the courts that have offered such criticism. In fact, this court approved a similar opt in procedure in *Loch*, 2023 WL 3180859, at *4. Giving employees a convenient way of opting in does not make the notice unduly suggestive.

Third, and finally, the parties dispute whether plaintiffs should be allowed to submit "reminder" notices 30 days after the first notice was sent. This court has repeatedly rejected requests for multiple rounds of notice: "The purpose of notice is simply to inform potential

class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." *Campeau*, 86 F. Supp. 3d at 919 (quoting *Witteman v. Wis. Bell, Inc.*, No. 09–cv–440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010)). In other words, sending additional rounds of notice to individuals who have already received notice could be reasonably construed as solicitation or "judicial encouragement to join the lawsuit." *Schroeder v. Humana Inc.*, No. 12–cv–137, 2012 WL 5931886, at *9 (E.D. Wis. Nov. 27, 2012); *see also DePyper,* No. 20-cv-2317, 2020 WL 6565225, at *5 (adopting same reasoning).

Plaintiffs contend that a second round of notice is needed to ensure that everyone in the proposed collective learns about the case. But that is the reason the court is approving three different kinds of notice. Plaintiffs are not proposing a different method for providing the second round of notice, just the same methods a second time. Plaintiffs identify no reason why a second round of notice using the same methods would likely reach a significant number of additional people. Rather, the true purpose of the notice appears to be to encourage recipients who are on the fence about joining or simply were not motivated to join after the first notice. But that is not a proper purpose for a court-authorized notice. The court will approve one round of notice with a 60-day opt-in period.

Plaintiffs ask the court to direct Festival to provide them with the names, mailing and personal email addresses, personal telephone numbers, dates worked in positions within the collective definition, and employee ID number if assigned, in electronically importable (Excel) format. Festival does not raise any specific objections to this request, so the court will grant it.

ORDER

IT IS ORDERED that:

1.  Plaintiffs' motion to authorize notice to the proposed collective, Dkt. 22, is GRANTED.

2.  Defendant Skogen's Foodliner, Inc. may have until March 4, 2026, to provide plaintiffs with the names, mailing and personal email addresses, personal telephone numbers, dates worked in positions within the collective definition, and employee ID number if assigned, in electronically importable (Excel) format.

3.  Plaintiffs' proposed notices are APPROVED with the modifications discussed in the opinion. Plaintiffs may send notice by mail, email, and text message, allowing 60 days to opt in. Plaintiffs may have until March 25, 2026, to issue the notices.

Entered February 11, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge